O

# United States District Court
# Central District of California

| | |
|---|---|
| RAHA MOMENI et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANTONY J. BLINKEN et al., <br><br> Defendants. | Case № 2:24-cv-04879-ODW (AGRx) <br><br> **ORDER DENYING MOTION TO DISMISS [12]** |

## I.  INTRODUCTION

Plaintiffs Raha Momeni, Faraz Momeni, Mozhgan Khorrami, Tara Momeni, and Ali Momeni ("Plaintiffs") bring this mandamus action against Defendants Antony J. Blinken, as U.S. Secretary of State, and Robert Jachim, as Acting Director of the Office of Screening, Analysis, and Coordination ("Defendants").[1]  (Pet. ¶¶ 16–22, ECF No. 1.)  Plaintiffs seek to compel Defendants to adjudicate their pending family-based immigrant visa applications.  (*Id.* ¶ 11.)  Defendants move to dismiss Plaintiffs' Petition.  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 12.)  For the reasons below, the Court **DENIES** the Motion.[2]

---

[1] Plaintiffs noticed the substitution of Robert Jachim for Carson Wu, pursuant to Federal Rule of Civil Procedure 25(d).  (Pls.' Substitution, ECF No. 10.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND[3]

In 2007, Raha Momeni, a United States citizen, filed a family-based I-130 Petition for Alien Relative to sponsor her brother, Faraz Momeni, an Iranian national, and his derivative spouse and children, Mozhgan Khorrami, Tara Momeni, and Ali Momeni, for immigrant status.  (Pet. ¶¶ 54–57.)  In 2012, U.S. Citizenship and Immigration Services ("USCIS") approved Raha's[4] I-130 petition, and in 2019, Faraz, Mozhgan, Tara, and Ali were permitted to and timely filed their DS-260 immigrant visa applications.  (*Id.* ¶¶ 58–60.)

On June 20, 2023, Faraz, Mozhgan, Tara, and Ali were interviewed by the Consular Section of the U.S. Embassy in Ankara, Turkey.  (*Id.* ¶ 61.)  At the conclusion of the interview, the consular officer informed Faraz, Mozhgan, Tara, and Ali that "the application would have to undergo mandatory administrative processing which would be completed in a few months."  (*Id.* ¶ 62.)  The consular officer provided a notice informing them that the "visa application is temporarily refused under section 221(g) of the Immigration and Nationality Act," ("INA"), and "this refusal may be overcome once the missing documentation and/or administrative processing have been met."  (*Id.* Ex. D ("§ 221(g) Notice"), ECF No. 1-4.)  The Embassy emailed Faraz and requested that he complete additional Form DS-5535, Supplemental Questions for Visa Applicants, and Faraz provided the requested fifteen years of detailed history on June 21, 2023.  (Pet. ¶¶ 64–65.)  On July 11, 2023, the Embassy confirmed receipt of Faraz's completed DS-5535 questionnaire, and informed him "that the [c]ase is currently in administrative processing.  If we need additional information, we will contact you again."  (*Id.* ¶ 66.)

Since then, the status of Faraz and his family's applications remains unchanged.  The Consular Electronic Application Center ("CEAC") website shows the case is

---

[3] All factual references derive from Plaintiffs' Petition or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] The Court respectfully uses first names for clarity.

"Refused," and states that applications "refused for administrative processing . . . will remain refused while undergoing such processing," and such applications "will receive another adjudication once such processing is complete." (*Id.* ¶ 68, Ex. B ("CEAC Status"), ECF No. 1-2.) Plaintiffs have inquired multiple times as to the status of their visa applications and have received no new or useful information. (Pet. ¶ 70.) As of February 5, 2024, "the case [wa]s still undergoing the required administrative processing." (Pet. ¶ 71, Ex. E ("Embassy Corr.") 4, ECF No. 1-5.) Plaintiffs were advised that Faraz's family's derivative applications cannot be adjudicated "before [Faraz's] principal applica[tion's] administrative processing is complete." (Pet. ¶ 73.) To date, Plaintiffs have not received a final decision on the pending visa applications, and Faraz's principal application ("Application") remains in an indefinite state of additional "administrative processing." (*Id.* ¶¶ 74–75.)

On June 10, 2024, Plaintiffs filed the Petition alleging that Defendants have unreasonably delayed adjudicating their visa applications, and seeking to compel Defendants to adjudicate their applications and issue a final decision. (*Id.* ¶¶ 10–11.) Plaintiffs seek relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), 706(2). (*Id.* ¶¶ 133–96.)

Defendants move for dismissal under Federal Rules of Civil Procedure ("Rule") 12(b)(1), for lack of subject matter jurisdiction,[5] and 12(b)(6), for failure to state a claim. (*See* Mot. 1–3, 4.) The Motion is fully briefed. (*See* Opp'n, ECF No. 13; Reply, ECF No. 14.)

---

[5] Defendants' arguments for dismissal under Rule 12(b)(1) are misplaced. "The Ninth Circuit has held that federal courts have subject matter jurisdiction over APA claims pursuant to 28 U.S.C. § 1331." *Aminzadeh v. Blinken*, No. 2:24-cv-02025-DSF (MRWx), 2024 WL 3811153, at *2 n.2 (C.D. Cal. Aug. 9, 2024) (citing *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022)). "[T]he requirements for obtaining relief under the APA go to the merits, not to subject matter jurisdiction." *Vaz*, 33 F.4th at 1135. As such, Defendants' Rule 12(b)(1) arguments "go not to jurisdiction, but to the sufficiency of Plaintiffs' complaint." *Aminzadeh*, 2024 WL 3811153, at *2 n.2. The Court evaluates Defendants' Motion accordingly.

In connection with the Motion, Defendants request that the Court take judicial notice of "government websites cited in" the Motion. (Mot. 2 n.1.) Plaintiffs oppose Defendants' request, and in turn seek judicial notice of "information submitted with the complaint as well as those submitted with" the Opposition. (Opp'n 1 n.1, 2 n.3 (internal citation omitted).) To the extent the identified materials may be incorporated by reference in Plaintiffs' Petition, the Court considers but does not judicially notice them. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (providing that a court may, but is not required to, consider evidence incorporated by reference into a complaint); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). The Court declines to take judicial notice of the parties' other requested materials, which lack support in argument or analysis, have not been properly presented to the Court, or are not appropriate for consideration on a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Evid. 201.

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, the factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### IV.    DISCUSSION

Plaintiffs allege that Defendants have unreasonably delayed adjudication of Faraz's immigrant visa Application in violation of APA § 555(b), and ask the Court to compel adjudication under APA §§ 706(1), 706(2), and the Mandamus Act. (*See* Pet. ¶¶ 133–96.)

Defendants argue that Plaintiffs' claims must be dismissed because (1) Defendants refused the Application and have no mandatory, non-discretionary duty to re-adjudicate refused visa applications; (2) the doctrine of consular nonreviewability precludes the Court's review; (3) Secretary Blinken cannot provide the requested relief; and (4) Plaintiffs fail to state a plausible claim for unreasonable delay. (Mot. 4–5.)

**A.    APA and Mandamus Act**

Section 706(1) of the APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed," whereas APA § 706(2) allows a court to "hold unlawful and set aside agency action, findings, and conclusions." *Durham v. Blinken*, No. 2:24-cv-02868-PSG (MRWx), 2024 WL 3811146, at *4 (C.D. Cal. Aug. 8, 2024). "A challenge to an agency's alleged failure to act," such as Plaintiffs assert here, "is more appropriately channeled through Section 706(1)," and the Court thus properly evaluates the claim under APA § 706(1), not § 706(2).[6] *See id.* (quoting *Al Otro Lado,*

---

[6] Defendants move to dismiss Plaintiffs' APA §§ 706(2) and 555(b) claims because they should be evaluated under APA § 706(1). (Mot. 21–23.) The Court agrees with Defendants that Plaintiffs fail to state an APA § 706(2) claim because Plaintiffs do not challenge a final agency action. *See Durham*, 2024 WL 3811146, at *4 n.5. However, APA § 555(b) interrelates with APA § 706(1) to the extent § 706(1) allows a court to compel agency action unreasonably delayed. *Id.* (finding §§706(1) and 555(b) interrelated and relevant to APA and Mandamus claims for unreasonable delay). According, the Court **GRANTS** Defendants' Motion in part and dismisses the APA § 706(2) claim. However, the Court does not dismiss the APA § 555(b) claim on this basis.

*Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1309 (S.D. Cal. 2018)). Further, the standards for challenging agency inaction under the APA and the Mandamus Act are "in essence" the same, so the Court elects to analyze Plaintiffs' Mandamus claim under the APA. *Vaz*, 33 F.4th at 1135 (making similar election).

Under the APA, an administrative agency is required to adjudicate "a matter presented to it" within a "reasonable time." 5 U.S.C. § 555(b). Where an agency fails to do so, a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) ("A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action.").

## B. Mandatory Non-Discretionary Duty

Defendants move to dismiss the Petition on the grounds that refusal under INA § 221(g) for administrative processing satisfies Defendants' duty to adjudicate Faraz's visa Application, and Defendants do not have a mandatory, non-discretionary duty to re-adjudicate the Application. (Mot. 6–10.)

The INA requires that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Under 22 C.F.R. § 42.81(a), applicable here, "when a consular officer receives a properly completed and executed visa application, the officer must (a) 'issue the visa," (b) "refuse the visa under INA [§§] 212(a) or 221(g)," or (c) 'discontinue granting the visa.'" *Shahijani v. Laitinen*, No. 2:23-cv-03967-RGK (MRWx), 2023 WL 6889774, at *2 (C.D. Cal. Oct. 6, 2023) (quoting 22 C.F.R. § 42.81(a)). Thus, "the State Department is 'required by law to act on visa applications.'" *Aminzadeh*, 2024 WL 3811153, at *4 (quoting *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997)).

1        The Ninth Circuit has ruled that a "purported 'refusal' of a visa application 'is not a refusal within the meaning of 22 C.F.R. § 42.81' if 'it is not a final decision.'" *Shahijani*, 2023 WL 6889774, at *3 (quoting *Patel*, 134 F.3d at 932). Thus, merely characterizing an application as "refused" does not necessarily mean it is finally adjudicated. *Durham*, 2024 WL 3811146, at *5 ("[C]haracterizing an INA § 221(g) notification as a 'refusal is not a 'get-out-of review-free card.'" (quoting *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022))). Instead, courts must consider "what is *actually* happening" in the case. *Aminzadeh*, 2024 WL 3811153, at *4 (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020)).

       Some courts in the Central District, including this Court, have previously found that a refusal for administrative processing under INA § 221(g) fulfills the consulate's duty to "issue" or "refuse" a visa application. *See Senobarian v. Blinken*, No. 2:23-cv-07208-ODW (MAAx), 2024 WL 897566, at *3 (C.D. Cal. Feb. 29, 2024) (finding the consular officer's § 221(g) refusal for administrative processing of a non-immigrant visa application satisfied the consulate's duty to adjudicate the application under 22 C.F.R. § 41.121); *OC Modeling, LLC v. Pompeo*, No. 2:20-cv-01687-PA (MAAx), 2020 WL 7263278, at *3 (C.D. Cal. Oct. 7, 2020) (same).

       "However, other courts have found that refusal for administrative processing is not a final decision and therefore does not discharge the agency's obligation to adjudicate visa applications." *Aminzadeh*, 2024 WL 3811153, at *4 (collecting cases). Indeed, "[c]ourts in this district" and elsewhere "have repeatedly held that a refusal for 'administrative processing' is not a final decision." *Shahijani*, 2023 WL 6889774, at *3; *see, e.g.*, *Tamjidi v. Blinken*, No. 8:24-cv-00403-HDV (JDEx), 2024 WL 4328813, at *3 (C.D. Cal. Aug. 27, 2024) (collecting cases recognizing "that the government cannot sidestep its duties by simply labeling an ongoing case a refusal"); *Morales v. Mayorkas*, No. 23-cv-1758 BEN (MSB), 2024 WL 2884554, at *3 (S.D. Cal. June 7, 2024) (holding that "an initial consular refusal setting the stage for

additional administrative processing . . . is not a final decision"); *Vulupala*, 438 F. Supp. 3d at 99 (holding that "an interim decision is not sufficiently final").

Having carefully examined these decisions, and upon further consideration, the Court is persuaded by the reasoning of its sister courts that have found a refusal for administrative processing is not a final adjudication. "A refusal for administrative processing that indicates another adjudication is forthcoming pending additional document submission and review hardly appears to be a final decision." *Alam v. Blinken*, No. 2:24-cv-01103-DJC-CKD, 2024 WL 4804557, at *5 (E.D. Cal. Nov. 15, 2024). Permitting it to masquerade as one impermissibly "elevates form over substance." *Tamjidi*, 2024 WL 4328813, at *1. Rather than simply accepting the label of "Refused," courts should consider "what is actually happening" in a specific case to determine whether an agency has discharged its duty. *Vulupala*, 438 F. Supp 3d at 98. Accordingly, the Court joins the prevailing position among California district courts in holding that a soft refusal for administrative processing is not a final decision, and therefore does not discharge an agency's mandatory non-discretionary obligation to adjudicate a visa application.

Turning to the present case, Plaintiffs' allegations support their contention that "what is actually happening" is the consulate has not yet adjudicated their applications. Immediately after "temporarily refus[ing]" Faraz's Application for administrative processing, (Pet. ¶ 62), the consulate requested that he complete and submit Form DS-5535, which required Faraz to submit fifteen years of detailed history including addresses, employment, travel, and social media handles, (*id.* ¶ 65). Courts have found that a consular official's request for Form DS-5535 "suggests the consular official did not reach a final decision . . . but instead kept [the application] under consideration" pending the additional requested information. *See Alam*, 2024 WL 4804557, at *5; *see also Aminzadeh*, 2024 WL 3811153, at *4 (finding the request for more information indicated that another adjudication was forthcoming).

Additionally, Plaintiffs received a § 221(g) Notice informing them that the "visa [A]pplication is *temporarily* refused" and that this refusal may be overcome following administrative processing. (Pet. ¶ 62 (emphasis added); § 221(g) Notice 1.) Plaintiffs have inquired repeatedly regarding the status of their visa applications and have been informed that the case remains in "the required administrative processing." (Pet. ¶¶ 70–72.) And although the CEAC website shows that the Application is "Refused," it also informs those who have been "refused for administrative processing," like Plaintiffs here, that they "will receive another adjudication once such processing is complete." (CEAC Status.) This ongoing "required administrative processing" supports Plaintiffs' assertion that the preliminary refusal was not a final adjudication, (Opp'n 11–13; *see* Pet. ¶¶ 169–80), and instead functions as a "'placeholder' designation that the agency uses on applications that have not officially been denied," *Li v. Blinken*, No. 8:23-cv-02142-DOC (KESx), 2024 WL 2107341, at *3 (C.D. Cal. Apr. 4, 2024). Thus, Plaintiffs plausibly allege Defendants have not discharged their mandatory non-discretionary duty to finally adjudicate Plaintiffs' visa applications.[7]

Defendants have a mandatory non-discretionary duty to adjudicate Plaintiffs' visa applications, and Plaintiffs sufficiently allege that Defendants have failed to do so. Accordingly, the Court denies the Motion as to this basis for dismissal.

C. **Consular Nonreviewability Doctrine**

Defendants' next argue that the doctrine of consular nonreviewability precludes judicial review of Plaintiffs' claims because Plaintiffs challenge the consular officer's denial of the Application. (Mot. 11–14.)

Although a consular official's discretionary decision to grant or deny a visa petition is not generally subject to judicial review, jurisdiction exists over suits challenging the authority of the consul to take or fail to take an action. *Patel*, 134 F.3d

---

[7] Defendants' argument, that they have no mandatory non-discretionary duty to *re-adjudicate* the Application, is unpersuasive and inapposite. (Mot. 6–11.) Plaintiffs do not argue Defendants have a duty to re-adjudicate the Application; rather, Plaintiffs assert Defendants have failed or unreasonably delayed issuing a final determination at all.

9

at 931–32; *see also Nwansi v. Rice*, No. C 06-0003 TEH, 2006 WL 2032578, at *3 (N.D. Cal. July 18, 2006) ("[W]here a consular officer has a *nondiscretionary* duty to act but refuses to do so, the court can grant mandamus relief and force the consulate to issue a decision (though importantly, in issuing the writ, the court may not direct the agency *how* to act).").

As explained above, the consular officer's refusal of Faraz's Application was a placeholder and temporary refusal for "further administrative processing"; it was not a final adjudication. As "[t]he doctrine of consular nonreviewability is not triggered until a consular officer has made a decision with respect to a particular visa application," *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) (citing *Patel*, 134 F.3d at 932), the doctrine does not apply here, where no such decision has been made, *see, e.g.*, *Aminzadeh*, 2024 WL 3811153, at *4 (finding consular nonreviewability doctrine did not bar suit where plaintiffs sought adjudication, not reconsideration); *Durham*, 2024 WL 3811146, at *5 (same). Accordingly, the Court denies the Motion as to consular nonreviewability.

**D.  Proper Defendants**

Defendants also argue the Court should dismiss Defendant Secretary Blinken because "he has no role in re-adjudicating the visa application in question." (Mot. 5.) Defendants cite two D.C. Circuit cases for the proposition that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)); (*see* Mot. 5).

Defendants are correct that "Congress specifically exempted the exercise of [the authority to issue or deny visas] from review by the Secretary of State." *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986). However, Secretary Blinken is the U.S. Secretary of State, with supervisory authority over the U.S. embassies and consulates and the offices responsible for visa application processing.

*Aminzadeh*, 2024 WL 3811153, at *3; 22 U.S.C. § 2651a(a)(3)(A) (providing that the Secretary of State "shall administer, coordinate, and direct the Foreign Service of the United States and the personnel of the Department of State"); (Pet. ¶ 21 (alleging Secretary Blinken oversees operations of U.S. embassies and consulates)).

Plaintiffs do not challenge a consular officer's determination, but rather challenge Defendants' failure or unreasonable delay in making a determination. As such, the Court is not persuaded that Secretary Blinken is unable to provide the relief Plaintiffs seek by, for instance, directing the consular officers to decide pending applications within a reasonable time. *See Al-Gharawy*, 617 F. Supp. 3d at 10 ("[N]othing in *Baan Rao* or *Saavedra Bruno* precludes the Secretary . . . from directing consular officers 'to conclude matters presented to them' 'within a reasonable time.'") (cleaned up) (quoting 5 U.S.C. § 555(b)). Accordingly, the Court denies the Motion as to Secretary Blinken.

### E.  Unreasonable Delay

Finally, Defendants argue that Plaintiffs fail to state a plausible claim for unreasonable delay under the APA based on the twelve-month delay in this case. (Mot. 15–21.)

"To determine whether an agency's delay is unreasonable, courts in the Ninth Circuit apply the six-factor test articulated in *Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984), commonly referred to as the '*TRAC* test.'" *Tamjidi*, 2024 WL 4328813, at *5; *Vaz*, 33 F.4th at 1137 (applying *TRAC* factors). The *TRAC*-factors are fact-intensive, and many district courts have found it inappropriate and premature to weigh them on a motion to dismiss. *See, e.g.*, *Tamjidi*, 2024 WL 4328813, at *5 (C.D. Cal. Aug. 8, 2024) (collecting cases declining to conduct *TRAC* analysis at motion-to-dismiss stage). Other district courts have proceeded with the *TRAC* analysis on a motion to dismiss. *See, e.g.*, *Aminzadeh*, 2024 WL 3811153, at *6–8 (evaluating and balancing the *TRAC* factors in ruling on motion to dismiss). The Court agrees with the former reasoning and saves the *TRAC*

test for a later day—the Court declines to rule as a matter of law whether the *TRAC* test is satisfied at this early stage.

As such, Plaintiffs need only to allege a legally cognizable theory and offer non-conclusory factual allegations sufficient to support that theory. *Iqbal*, 556 U.S. at 681. Plaintiffs have done so. Plaintiffs allege they were advised the mandatory additional administrative processing would be completed in a few months, (Pet. ¶ 62), but the processing of Faraz's Application has taken more than four times longer than advised with no explanation. Thus, Plaintiffs adequately allege that Defendants have unreasonably delayed processing Plaintiffs' applications. *See Li*, 2024 WL 2107341, at *3 (finding plaintiff plausibly alleged unreasonable delay outside of *TRAC* where processing of visa application took six months longer than defendants represented).

Accordingly, the Court denies the Motion as to unreasonable delay.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 12.) Specifically, the Court dismisses Plaintiffs' APA § 706(2) cause of action without leave to amend, because amendment would be futile. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). The Court denies Defendants' Motion in all other respects. Defendants have fourteen days to file an answer to Plaintiffs' Petition.

**IT IS SO ORDERED.**

December 13, 2024

_____
          **OTIS D. WRIGHT, II**
    **UNITED STATES DISTRICT JUDGE**